**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LEVITON MANUFACTURING CO., INC,

                Plaintiff,

          -against-

GEORGE J. REEVE, JR., CHARLOTTE H.
REEVE, THE LAW FIRM OF ARTHUR M.
GAREL, and ARTHUR M. GAREL,

                Defendants.
--------------------------------------------------------X

              **MEMORANDUM OF**
              **DECISION AND ORDER**
              11-CV-6238 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Littleton Joyce Ughetta Park & Kelly LLP**
*Attorneys for the Plaintiff*
1 Manhattanville Road
Suite 302
Purchase, NY 10577
      By: Bryon L. Friedman, Esq.,
         Jason P. Sultzer, Esq., Of Counsel

**Law Office of Maria del Carmen Calzom**
*Attorneys for the Defendants George J. Reeve, Jr. and Charlotte H. Reeve*
1825 Ponce De Leon Blvd #249
Coral Gables, FL 33134
      By:  Maria del Carmen Calzon, Esq., Of Counsel

**The Law Firm of Arthur M. Garel**
*Pro Se Defendant and Attorneys for the Defendant Arthur M. Garel*
2701 S. Bayshore Drive
Suite 402
Miami, FL 33133

**SPATT, District Judge**.

      On December 22, 2011, the Plaintiff Leviton Manufacturing Co., Inc. commenced this

action against the Defendants George J. Reeve, Jr., Charlotte H. Reeve, The Law Firm of Arthur

M. Garel, and Arthur M. Garel (collectively, "the Defendants"), asserting claims for breach of

contract, fraud, and negligent misrepresentation.  Presently before the Court are three motions to

dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12 for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted.  The motions were filed on behalf of (1) the Defendants the Law Firm of Arthur M. Garel and Arthur M. Garel (collectively the "Attorney Defendants") (Docket Entry No. 18); (2) the Defendant Charlotte H. Reeve (Docket Entry No. 24); and (3) the Defendant George J. Reeve, Jr. (Docket Entry No. 25.)  For the reasons set forth below, the motion made by the Defendants the Law Firm of Arthur M. Garel and Arthur M. Garel is granted, and the motions made by the Defendants Charlotte H. Reeve and George J. Reeve, Jr. are granted in part and denied in part.

## I.  BACKGROUND

### A.  Factual Background

The following facts are drawn from the Complaint and construed in the light most favorable to the Plaintiff.

Non-party East Coast Electrical Services, Inc. ("ECES") is a Florida corporation.  Prior to May 6, 2009, the Defendants George J. Reeve, Jr. ("George Reeve") and Charlotte H. Reeve ("Charlotte Reeve") (collectively "the Reeve Defendants") owned 1,500 shares of ECES, which was all of the outstanding stock of the corporation.  George Reeve served as ECES's Chief Operating Officer, Chief Executive Officer, and Chairman of the Board.

On or about May 6, 2009, the Plaintiff Leviton Manufacturing Co., Inc. ("Leviton" or "the Plaintiff") and the Reeve Defendants entered into a Stock Purchase Agreement, under which the Reeves agreed to sell Leviton all issued and outstanding ECES stock for $2 million ("the Stock Purchase Agreement").  On the closing date, May 6, 2009, the Reeves sold all of the ECES stock to Leviton at Leviton's offices in Little Neck, New York.

In Section 4.2 of the Stock Purchase Agreement, titled "Representations, Warranties and Covenants with Respect to ECES", the Reeves represented and warranted as follows:

> *Litigation, etc.* Except for those matters disclosed in Schedule L hereto, there is no outstanding judgment, arbitration award, injunction, decree or warrant against or otherwise affecting ECES, nor is there any litigation, proceeding, arbitration or United States, state or local governmental investigation pending or, so far as is known to the Stockholders, threated against or relating to ECES or its properties or business or the transactions contemplated by this Agreement, nor is there any basis known to the Stockholders for any such litigation, proceeding, arbitration or investigation.

Stock Purchase Agreement § 4.2(q). Schedule L, referred to above, stated "NONE".

In Section 6.1 of the Stock Purchase Agreement, titled "Access to and Information Concerning Properties and Records, etc.", the Reeve Defendants further represented and warranted as follows:

> The Stockholders agree that they will give and cause ECES to give to Buyer and to Buyer's counsel, accountants and other representatives full access during normal business hours throughout the period up to the Closing Date to all of ECES's properties, book, contracts, commitments and records, and will furnish Buyer during such period with all such information and documents concerning ECES as Buyer may reasonably request.

Stock Purchase Agreement § 6.1.

Section 6.2 of the Stock Purchase Agreement stated that ECES would maintain its books and records in a correct and regular manner. In that same section, it also stated that between the date of the agreement and the closing date, the Stockholders would advise Leviton promptly in writing "of any fact which, if known at the date hereof, would have been required to be set forth or disclosed in or pursuant to this Agreement including any material adverse change in the financial condition, results or operations, cash flow or prospects of ECES", as well as any material damage to or material loss of any of the assets of ECES.

Finally, Section 7 of the Stock Purchase Agreement, titled "Conditions Precedent to Obligations of Buyer", stated that the obligations of Leviton were subject to the following conditions precedent: (a) accuracy of representations and warranties; (b) performance of agreements, meaning the performance of covenants and conditions contained in the agreement; and (c) that the buyer was satisfied with the results of its due diligence investigation.

On May 6, 2009, the Defendant Arthur M. Garel, the attorney for the Garels, executed and delivered a letter to Leviton (the "Opinion Letter"). According to the Plaintiff, this letter was delivered for the purpose of inducing Leviton to proceed to consummate the transaction contemplated by the Stock Purchase Agreement. The Opinion Letter stated that the Attorney Defendants were acting as counsel to the Reeves in connection with the stock sale to Leviton; they furnished the letter solely for Leviton's benefit; they had examined ECES's documents, records, and other instruments; and that there were no outstanding orders, judgment, injunctions, awards, or any other claim, notice, or threatened action or proceeding, that could adversely affect the Sellers, ECES, or any of their respective assets.

After the closing date, Leviton learned that, contrary to the Defendants' warranties and representations, ECES was and had been subject to two racial discrimination claims filed with the EEOC in November 2007 by two former employees of ECES. One of the Reeve Defendants had in fact retained counsel to represent ECES in the EEOC matters, vigorously contesting the charges. After the stock sale to Leviton, the EEOC claimants filed a lawsuit in the United States District Court of the Southern District of Florida against Leviton under case number 10-CV-20338, based on the identical racial discrimination claims asserted in the EEOC matters they filed against ECES. Leviton expended $20,000 to settle this litigation, plus an additional $98,853 in legal fees and expenses. In addition, the Plaintiff alleges that in order to address this

4

litigation, it was required to devote immeasurable corporate energies and assets, which distracted Leviton from making efforts to manage, develop, and increase the ECES business operations.

Leviton filed the instant action on December 22, 2011. The Plaintiff asserts several causes of action against the Reeve Defendants, including breach of contract, fraud, rescission, and negligent misrepresentation. Leviton has also asserted two causes of action against the Attorney Defendants for fraud and negligent misrepresentation. All four Defendants have filed motions to dismiss the Complaint.

## II. DISCUSSION

### A. Legal Standards

#### 1. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Metropolitan Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by making a *prima facie* showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence. Bank Brussels Lambert, 171 F.3d at 784; Kernan v. Kurz– Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). Furthermore, materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state. See Whitaker, 261 F.3d at 208. Therefore, this Court

must look to New York's personal jurisdiction statutes, namely the New York Civil Practice Law and Rules ("CPLR") Sections 301 and 302, to determine whether the Plaintiff has made a *prima facie* showing of personal jurisdiction over the out-of-state defendants—here, the Attorney Defendants. Then, if jurisdiction is found, the Court must determine whether the exercise of such jurisdiction under state law satisfies the federal due process requirements of "fair play and substantial justice." Burger King Corp., v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); see also Bank Brussels Lambert, 171 F.3d at 784.

### 2. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard set forth below, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113. In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. Makarova, 201 F.3d at 113.

### 3. Failure to State a Claim

Under the now well-established Twombly standard, a complaint should be dismissed pursuant to Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d

Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere concl usory statements, do not suffice.'" <u>Id.</u> at 72 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. <u>Zinermon v. Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)". <u>Hertz Corp. v. City of N.Y.</u>, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198 (2d Cir. 2001) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

**B.  Whether the Motions to Dismiss Should be Accepted**

The Defendants George Reeve and Charlotte Reeve (collectively "the Reeve Defendants") filed motions to dismiss the complaint on February 2, 2012.  However, on April 2, 2012, the Court dismissed these motions without prejudice for failure to comply with the Local Rules of the Eastern District of New York.  On June 4, 2012, the Reeve Defendants filed their second motions to dismiss.  (Docket Entry Nos. 24 & 25.)  However, these motions were filed outside of the timeline of Fed. R. Civ. P. 12(a)(4).  In addition, upon discovering that the electronic filing of their second motions to dismiss had failed to attach the supporting affidavits, the motions were re-filed on June 5, 2012.  (Docket Entry Nos. 26 & 27.)

The Reeve Defendants' counsel has filed an affidavit with the Court seeking to explain the basis for this delay.  She states that during the time when the motions were due to be filed, she was dealing with both the illness of her parent, as well as battling with her own personal illness that prevented her from filing the pleading before the appropriate deadline.  She asserts that this supports a finding of good cause to extend the time to file the motions to dismiss and that the failure to act was the result of excusable neglect.

Under Rule 6(b)(1)(B), the Court may, for good cause, extend time "on a motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6.  In the Court's view, the affidavit submitted by the counsel for the Reeve Defendants suggests excusable neglect, namely that both she and her father suffered from illnesses.  In addition, there does not appear to be any prejudice to the Plaintiff that would result from accepting this late filing.  The Plaintiff was put on notice that such a motion would likely be filed when the Court denied the first motion to dismiss without prejudice.  In addition, the Plaintiff has not cited to any prejudicial effect in its opposition.  Therefore, the Court will grant the Reeve Defendants'

application for an extension of time to file the instant motions to dismiss and will accept for consideration the latter filed motions—namely the motions filed on June 5, 2012.

## C.  The Attorney Defendants' Motion to Dismiss

Before reaching the Reeve Defendants' motion to dismiss, the Court will first address the motion to dismiss filed by Arthur Garel and the Law Firm of Arthur Garel (the "Attorney Defendants").  The basis of this motion to dismiss is that the Court lacks personal jurisdiction over the Attorney Defendants pursuant to Fed. R. Civ. P. 12(b)(2).

Garel asserts that he, and presumably his law firm, lacks minimum contacts with New York in order to sustain jurisdiction in this District.  According to Garel, he sent nothing to New York; did nothing in New York; had no intention of doing anything in New York; and did not avail himself of the privilege of conducting activities in New York.  On the other hand, the Plaintiff argues that Garel and his law firm are subject to personal jurisdiction in this matter either: (1) by consent based on the forum selection clause in the Stock Purchase Agreement, pursuant to CPLR § 301; or (2) by virtue of his participation in the underlying transaction that occurred in New York, pursuant to CPLR § 302(a)(1).  Finally, the Plaintiff urges the Court to permit it to conduct jurisdictional discovery regarding the scope of Garel's potential revenue if either of the two previous theories are dismissed by the Court.

### 1.  The Forum Selection Clause and the "Closely Related" Test

The Plaintiff states that one basis for personal jurisdiction over Garel and his law firm in New York is the choice of forum provision in the Stock Purchase Agreement.  However, according to Garel, this provision is insufficient to prove jurisdiction.

Leviton's claims against Garel and his law firm arise from his Opinion Letter, which was provided to Leviton in New York "pursuant to … the Stock Purchase Agreement."  (See Opinion

Letter, Exhibit C.)  Specifically, Arthur M. Garel addressed a letter to Leviton Manufacturing

Co., Inc., with the address of Leviton's offices at 59-25 Little Neck Parkway, Little Neck, NY

11362-2591, and stated that he had "acted as counsel to George J. Reeve, Jr., and Charlotte H.

Reeve . . . in connection with the execution and delivery of the Stock Purchase Agreement."

(Id.)  Garel wrote that he furnished the opinion pursuant to the Stock Purchase Agreement and

that it was solely for Leviton's benefit.  Finally, he wrote that he examined and relied upon the

representations as contained in the Stock Purchase Agreement; the originals or copies of

documents, records and other instruments as deemed appropriate; and the corporate minute

books, including the certificates of incorporation and all amendments thereto, current By-laws,

stock ledger, and all minutes of the Board and Directors and shareholders for ECES.

 The Stock Purchase Agreement includes a forum selection clause under which any action

based on the Stock Purchase Agreement could be commenced in New York state or federal

court.  In particular, the Agreement states that:

> 15.15 Governing Law. This Agreement shall be governed by the laws of the State
> of New York, excluding its principles of conflicts of laws.  The parties agree that
> the venue of any action or proceeding hereunder shall exclusively be the
> appropriate New York State or Federal Court locate in the City and State of New
> York, that each irrevocably waives the right to seek to change such venue or raise
> the issue of forum non conveniens, and that service of process in any such action
> or proceeding shall be sufficient if made by recognized national overnight courier
> service to the addresses hereinbefore set forth or such other address as a party
> may have given in accordance with the provisions hereof.

(See Stock Purchase Agreement, Exhibit A.)  The Plaintiff contends that by providing the

Opinion Letter "pursuant to" the Stock Purchase Agreement, Garel consented to this choice of

forum provision and accordingly this Court's jurisdiction.

 "Parties can consent to personal jurisdiction through forum-selection clauses in

contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) (citing

Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315–16, 84 S. Ct. 411, 11 L. Ed. 2d 354

(1964)).  If the forum selection clause is both valid and applicable, "it is not necessary to analyze

jurisdiction under New York's long-arm statute or federal constitutional requirements of due

process." American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co., No.

11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012) (quoting Export–Import Bank of

the U.S. v. Hi–Films S.A. de C.V., No. 09 Civ. 3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sep.

24, 2010)).

There is a strong presumption in favor of upholding the enforceability of forum selection

clauses.  Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd., No. 09 Civ. 7268, 2009 WL

4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("[t]he Second Circuit has endorsed an expansive

reading of the scope of forum selection clauses, in keeping with the policy favoring their use.")

(citations omitted); see M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 9–10, 92 S. Ct. 1907,

32 L. Ed. 2d 513 (1972); Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993).  Forum

selection clauses play a crucial role in ensuring predictability in contract formation.  In re Refco

Inc., Secs. Litig., No. 08 Civ. 3086, 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both

the Supreme Court and the Second Circuit have recognized that forum selection clauses have

economic value and should be enforced in accordance with the expectations of the parties.")

(citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594, 111 S. Ct. 1522, 113 L. Ed. 2d

622 (1991); M/S Bremen, 407 U.S. at 13–15, 92 S. Ct. 1907; Aguas Lenders Recovery Group,

LLC v. Suez, S.A., 585 F.3d 696, 699–700 (2d Cir. 2009); Roby, 996 F.2d at 1363).

To enforce a forum selection clause, a party must show that: "(1) the clause was

reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and

not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum

selection clause." Tropp v. Corporation of Lloyd's, 385 Fed. App'x. 36, 37 (2d Cir. 2010).

Even if all three criteria are met, the opposing party may "make a sufficiently strong showing

that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such

reasons as fraud or overreaching.'" Phillips v. Audio Active Ltd., 494 F.3d 378, 383–84 (2d Cir.

2007) (quoting M/S Bremen, 407 U.S. at 15, 92 S. Ct. 1907).

     Here, the Court has no doubt that the clause was reasonably communicated to the party

resisting enforcement. Garel plainly read the Stock Purchase Agreement and was aware of this

provision, because he wrote in his Opinion Letter that he examined and relied upon the

representations contained in the Stock Purchase Agreement. It would be illogical for Garel to

disclaim knowledge of the relevant forum selection clause. See Overseas Ventures, LLC v.

ROW Mgmt., Ltd., Inc., No. 12 Civ. 1033, 2012 WL 5363782, at *4 (S.D.N.Y. Oct. 26, 2012)

("In general, awareness by a nonsignatory of a forum selection clause or of the contract in which

such a clause is contained is enough to satisfy the first condition."); see also KTV Media Intern.,

Inc. v. Galaxy Grp ., LA LLC, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011) ("Even '[i]n the

absence of direct communication of a forum-selection clause to a non-signatory, the non-

signatory may be nevertheless bound by the clause' if . . . the non-signatory is 'closely related' to

a signatory to the contract containing the forum selection clause.").

     In addition, the language of the clause in the Stock Purchase Agreement is mandatory and

not merely permissive. See S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir.

2010) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction

on the designated forum or incorporates obligatory venue language."); Brennen v. Phyto–Riker

Pharms., Ltd., No. 01 Civ. 11815, 2002 WL 1349742, at *3 (S.D.N.Y. June 20, 2002) ("inclusion

of the phrase 'exclusive jurisdiction' indicates an intent that any dispute . . . be filed in one of the

fora specified").  Further, there is no doubt that the claims involved in the suit are subject to the

forum selection clause, because all of Leviton's claims against both the Reeve Defendants and

the Attorney Defendants "arise out of" the Stock Purchase Agreement.  Leviton's claims all

center on the Defendants' alleged misrepresentations regarding whether there was any pending

or threatened litigation against ECES.  Here, Leviton's claims against Garel and his law firm are

virtually identical to, and arise out of the same transaction as those claims asserted against the

Reeve Defendants.

Finally, to the extent that "the enforcement of the forum selection clause against the non-

party must have been foreseeable prior to suit, which implies that the non-signatory must have

been otherwise involved in the transaction in some manner," Recurrent Capital Bridge Fund I,

LLC v. ISR Systems and Sensors Corp., No. 12 Civ. 772, 2012 WL 2402621, at *5 (S.D.N.Y.

June 25, 2012), there is no doubt that Garel was involved to some degree in the transaction.

However, the difficult question faced by this Court is whether Garel and his law firm are

subject to the forum selection clause although he is a non-signatory to the contract, but acted as

the signatory's counsel and provided an opinion letter pursuant to the agreement.

As an initial matter, the Court notes that Garel's non-signatory status does not, as a

general matter, prevent him from being bound by the forum selection clause.  See Aguas, 585

F.3d at 701 ("We find ample support for the conclusion that the fact a party is a non-signatory to

an agreement is insufficient, standing alone, to preclude enforcement of a forum selection

clause.") (collecting cases).

In determining when a non-signatory is bound, courts look at whether the non-signatory

is so "closely related to the dispute . . . that it becomes foreseeable that it will be bound."

Weingard v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *5–6 (S.D.N.Y. Nov. 7,

2005) (citation omitted); <u>see In re Optimal U.S. Litig.</u>, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011)

(determining non-signatory defendants to be closely related where they were affiliates of the

signatory hired to carry out its contractual obligations); <u>see also Shalam v. KPMG LLP</u>, No. 05

Civ. 112732, 2006 WL 2589917, at *5 (N.Y. Sup. Ct., N.Y. County, Sept. 8, 2006) ("The fact

that plaintiff is not a signatory to the contract will not prevent it from being enforced against him

where . . . plaintiff is so closely aligned with the signatory and the transaction that it is

foreseeable that he would be bound, and thus, implicitly, is included in its terms.").

The Court notes that the "closely related" test is an analysis that has been embraced by

several courts in this Circuit, including this one. <u>See, e.g.</u>, <u>KTV Media</u>, 812 F. Supp. 2d at 386

("A movant seeking dismissal may enforce a forum selection clause against a non-signatory

where the non-signatory is "closely related" to one of the signatories") (citations omitted); <u>MGM</u>

<u>Studios Inc. v. Canal+ Distrib. S.A.S.</u>, No. 07 Civ. 2918, 2010 WL 537583, at *5 (S.D.N.Y. Feb.

9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause

against a non-signatory if the non-signatory is 'closely related' to one of the signatories . . .");

<u>Kahala Corp. v. Holtzman</u>, No. 10 Civ. 4259, 2010 WL 4942221, at *3 (S.D.N.Y. Dec. 03, 2010)

("Under New York law, a forum selection clause may be enforced against a non-signatory who is

'closely related' to the dispute such that enforcement of the forum selection clause against him is

foreseeable"); <u>Refco</u>, 2009 WL 5548666 at *10 ("After <u>Aguas</u>, there can be no dispute that

forum selection clauses will be enforced even against non-signatories where they meet the

"closely related" standard"); <u>Great Northern Ins. Co. v. Constab Polymer–Chemie GmbH & Co.</u>,

No. 01 Civ. 0882, 2007 WL 2891981, at *8 (N.D.N.Y. Sep. 28, 2007) (finding that the non-

signatory may be nevertheless bound by the clause if the non-signatory "is closely related to the

dispute such that it becomes foreseeable that it will be bound.") (citations omitted); <u>Nanopierce</u>

Tech., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767, 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (enforcing a forum selection clause against a non-signatory corporate officer who was held to be closely related to the corporation).

The "closely related" test is necessarily satisfied where the defendant is a third-party beneficiary of the agreement, but that situation is not required. "It is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses," Atlasjet Uluslararasi Havacilik A.S. v. EADS Aeroframe Servs., LLC, No. 07 Civ. 212, 2009 WL 436420, at *4 (S.D.N.Y. 2009) (quoting Weingard, 2005 WL 2990645, at *4). Thus, "[a] non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." Weingard, 2005 WL 2990645, at *4 (quoting Lipcom v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)). The question then is whether Garel's interests are completely derivative of or directly related to the Reeves' interests, as their attorney. See, e.g., Aguas Lenders Recovery Grps., 585 F.3d at 701 (citing, with approval, Lipcom, which held that non-signatories were bound by a forum selection clause where they had provided letters of credit to signatories and "had interests in the litigation that were 'directly related to, if not predicated upon' those of the signatories").

Here, Garel argues that the forum selection clause contained in the Stock Purchase Agreement does not bind him or his law firm because he was neither a third-party beneficiary under that agreement or an agent of the Reeves. The relevant inquiry, however, is whether Garel's interests were "closely related" to those of Reeves and ECES, and whether he is closely related to the dispute.

Practically speaking, Garel is arguably "closely related" to the signatories in that he was acting as counsel to the Reeves for the purpose of the relevant transaction. See, e.g., MGM Studios Inc. v. Canal + Distrib. S.A.S., No. 07 Civ. 2918, 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is 'closely related' to one of the signatories such that 'enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'"). In addition, Garel could be found to be closely related to the dispute between Leviton and ECES concerning the Stock Purchase Agreement, because Garel's alleged wrongful conduct was the drafting and delivery of an Opinion Letter pursuant to that Agreement. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound) (quoting Hugel v. Corporation of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)). Further, the Plaintiff claims that each of the Defendants, including Garel, made material misrepresentations which induced it into purchasing all the outstanding stock of ECES subject to the Stock Purchase Agreement. Certainly, the non-signatory Defendants' alleged conduct was related entirely to the purchase of the ECES stock.

Nevertheless, the Court finds that Garel and his law firm are not sufficiently "closely related" so that enforcement of the forum selection clause was foreseeable by virtue of the relationship between the Reeves and Garel. The Plaintiff has not pointed to, and the Court has not uncovered, any case in which outside counsel was held to a forum selection clause contained in an agreement for a transaction in which that counsel provided some sort of due diligence or opinion. It is simply too attenuated under the particular circumstances of this case to bind the

Attorney Defendants to this provision. The vast majority of cases that have found a non-signatory bound by a forum selection clause under the theory that they are "closely related" to the dispute or the signatory, have done so where the non-signatory had a far more active role in the transaction, see, e.g., Firefly Equities, LLC v. Ultimate Combustion Co., Inc., 736 F. Supp. 2d 797 (holding the company's president to be sufficiently "closely related", in part because he himself signed the MOU), or where the non-signatory had an active role in the company that was the signatory. See id.; see also Roby v. Corporation of Lloyd's, 996 F.2d 1353 (2d Cir. 1993) (finding that the "complaints against the individual Chairs are completely dependent on the complaints against the [principals] ... [and] arise [ ] out of the same misconduct charged against the [principals]"); Nanopierce Technologies, Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (finding non-signatory to be bound by forum selection clause where the non-signatory was the corporation's chief financial officer).

While there is certainly a business relationship between ECES and Garel, it is not the type of close business relationship that other courts have found imperative. Cf. Refco, 2009 WL 5548666, at *11 (holding non-signatory and signatory to be closely related when their business operations were "intertwined."). There are also no allegations that the Defendants acted in concert to induce the Plaintiff into entering into the Stock Purchase Agreement. Cf. LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 147, 161 (E.D.N.Y. 2012) (Spatt, J.); Weingrad, 2005 WL 2990645, at *6 (finding non-signatories and signatories to be closely related where they allegedly acted in concert).

As one final attempt to obtain personal jurisdiction over the Attorney Defendants, the Plaintiff asserts that jurisdiction is proper under New York law, specifically N.Y. Gen. Oblig. L. § 5-1402. According to Leviton, jurisdiction is appropriate under New York law, which by

statute enforces a forum selection clause against a non-resident for any action that "arises out of or relates to" a contract with New York choice-of-law and choice-of-forum clauses valued over $1 million.  However, this statute cannot be utilized as a basis for jurisdiction over the Attorney Defendants, because it specifically requires that the contract "contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."  N.Y. GEN. OBLIG. L. § 5-1402(1).  As this Court has found that Garel is not bound by the forum selection clause and did not submit to the jurisdiction of the courts of this state, this statute is inapplicable to the instant case.

Therefore, the Court finds that the Attorney Defendants are not bound by the forum selection clause and consequently personal jurisdiction cannot be maintained over Garel or his law firm on this basis.  Accordingly, the Court will proceed to assess whether there is personal jurisdiction over Garel pursuant to New York's long arm statute.

### 2.  Participation in a New York Transaction Pursuant to CPLR § 302(a)(1)

The Plaintiff asserts that even if this Court were to find that Garel is not subject to the forum selection clause contained in the Stock Purchase Agreement, it should nevertheless find that jurisdiction is appropriate pursuant to CPLR § 302(a)(1).  According to Leviton, the claims against the Attorney Defendants arise out of a transaction of business — the sale of the ECES Stock — which occurred in the State of New York.  The Plaintiff contends that this is a sufficient basis of jurisdiction under CPLR § 302(a)(1), which says that "a court may exercise personal jurisdiction over any nondomiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the cause of action arises from the transaction.

Section 302 of New York's long-arm statute provides that:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

        (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

        (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

    4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a) (McKinney 2010).

"To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC, 450 F.3d 100, 103 (2d Cir. 2006). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted). When considering whether a defendant "transacted business," New York courts rely on the constitutional standard set forth by the Supreme Court: "whether the defendant's conduct constitutes 'purposeful[ ] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 246–47 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)) (alterations in original).

In contrast to "doing business," "transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). A single transaction may suffice for personal jurisdiction under § 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999); Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 21 A.D.3d 90, 93–94, 797 N.Y.S.2d 439, 442 (1st Dep't 2005) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)) (stating that Section 302(a)(1) "'is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York' as long as the requisite purposeful activities and the connection between the activities and the transaction are shown."). A finding of personal jurisdiction must be based upon the totality of the circumstances. Agency Rent A Car, 98 F.3d at 29. "Although Section 302(a)(1) is typically invoked in breach of contract cases . . . it applies as well to actions in tort when supported by a sufficient showing of facts." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004) (internal citations omitted).

There is no question that Garel was never physically present in New York State. Therefore, the Court must assess whether Garel's delivery of an opinion letter for a stock purchase agreement that occurred in New York State with a purchaser that has its principal place of business in New York State, qualifies as "transacting business" in New York. The Stock Purchase Agreement recited that the closing would be held at Leviton's office in Little Neck, New York (see Stock Purchase Agreement, Exhibit A, § 3, p. 5), and the transaction's Closing Memorandum recited that, "[t]he Closing was deemed to have occurred on such date and to have been held at the Leviton offices at 59-25 Little Neck Parkway, Little Neck, NY pursuant to the

20

agreement." (See Closing Memorandum, Exhibit B.) In short, Garel provided the Opinion Letter to Leviton "under" the Stock Purchase Agreement, with which he acknowledged familiarity, for a closing that occurred—according to the Stock Purchase Agreement's terms — in New York. In addition, the Opinion Letter was addressed to Leviton at their New York offices.

However, the Court finds that even when assuming that all of the Plaintiff's allegations are true and that Garel expressly provided the Opinion Letter to its client pursuant to a Stock Purchase Agreement that was to occur in New York State, this does not meet the requisite threshold for "transacting business" under CPLR § 302(a)(1). "Notably absent from the Complaint's detailed recitation of facts relating to the alleged fraud are allegations that could reasonably be construed to support even an inference of the 'purposeful conduct' required for a finding that [Garel] transacted business in New York in connection with the [Stock Purchase Agreement]." BHC Interim Funding, LP v. Bracewell & Patterson, LLP, No. 02 Civ. 4695, 2003 WL 21467544, at *4 (S.D.N.Y. June 25, 2003). As another district court in this circuit found under analogous factual circumstances, "[t]here is no allegation that any of [Garel's] legal work was done in New York or that [Garel] participated in any transaction-related activities in New York. Nor does the Complaint allege that [Garel] agreed to provide services or goods in New York. Rather, the Complaint alleges that certain documents were delivered by [Garel] to [ECES's] attorneys or representatives in New York." Id.

In the Court's view, the totality of the circumstances alleged are insufficient to support the exercise of jurisdiction over Garel or his law firm pursuant to CPLR § 302(a)(1). See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787-89 (2d Cir. 1999) (finding no CPLR § 302(a)(1) jurisdiction over a Puerto Rican law firm retained by New York

banks to provide an opinion in connection with certain transactions, where all of the legal work was performed in Puerto Rico, there was no physical presence of the defendant in New York, telephonic conversations did not include representation of the client at the New York closing, and the defendant was solicited outside of New York to perform the services).  "In the instant case, [the] Plaintiff is suing the out-of-state firm [and attorney] that represented its out-of-state contract counter-party; there is no allegation of participation by [Garel] in closing or other activities in New York, nor any allegation that the offending documents were prepared, or the alleged misrepresentations made by [Garel], in New York.  The activity alleged in the Complaint is insufficient, even when construed in the light most favorable to Plaintiff, to support CPLR section 302(a)(1) long arm jurisdiction."  BHC, 2003 WL 21467544, at *5.  Therefore, the Court dismisses this basis for personal jurisdiction over the Attorney Defendants.  See Terrydale Liquidating Trust v. Barness, No. 82 Civ. 7920, 1985 WL 1983, at *2 (S.D.N.Y. June 27, 1985) ("Even if the assertion of personal jurisdiction over one of the party-principals to the instant sales transaction is properly based on the partial negotiation of their sales agreement in New York, it appears that the critical acts performed by [the] non-party . . . —the preparation and issuance of its opinion letter—occurred elsewhere.").

### 3. Tortious Conduct Pursuant to CPLR § 302(a)(3)

Finally, the Plaintiff asserts that jurisdiction may also be available for Garel's tortious conduct under CPLR § 302(a)(3) by his commission of a tortious act outside the state that injured Leviton in New York.  Leviton concedes that it presently lacks sufficient information to establish that Garel either regularly conducts business in New York or derives substantial revenue from interstate or international commerce in order to meet one of the necessary conditions for this type of personal jurisdiction under subdivisions (i) or (ii) of section 302(a)(3).  Nevertheless, Leviton

asks that the Court allow limited jurisdictional discovery on this point if it does not find that jurisdiction otherwise exists.

Despite the Plaintiff's statements in its opposition brief that Garel could potentially (1) derive substantial revenue from goods used or services rendered in New York (to satisfy the pleading of jurisdiction under CPLR § 302(a)(3)(i)) or (2) derive "substantial revenue" from interstate or international commerce (to satisfy the pleading of jurisdiction under subsection CPLR § 302(a)(3)(ii)), as to these important elements, the Complaint is silent. "When considering only the allegations of the complaint, as the court is required to do, it cannot be said that [the] Plaintiff has satisfied the revenue pleading requirements of either subsection of Section 302(a)(3) of the CPLR." Fantastic Graphics Inc. v. Hutchinson, No. 09 Civ. 2514, 2010 WL 652987, at *4 (E.D.N.Y. Feb. 22, 2010); see Mazloum v. Int'l Commerce Corp., 829 F. Supp. 2d 223, 230 n.3 (S.D.N.Y. 2011) ("Mazloum would still fail to obtain jurisdiction, as he has not alleged specific facts that Miller expected or should reasonably have expected that his actions would have consequences in New York, or that Miller derives substantial revenue from interstate or international commerce, both of which are necessary to obtain jurisdiction under N.Y. C.P.L.R. § 302(a)(3)").

Leviton requests that this Court grant it jurisdictional discovery with regard to Garel's potential revenue in New York, rather than granting his motion to dismiss. But when a plaintiff has not even made a *prima facie* showing of personal jurisdiction, it is "well within" a court's discretion to deny jurisdictional discovery. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007); see Yash Raj Films (USA) Inc. v. Dishant.com LLC, No. 08 Civ. 2715, 2009 WL 4891764, 11 (E.D.N.Y. Dec. 15, 2009) (denying plaintiff's request for jurisdictional discovery as it would not cure the fatal deficiencies in plaintiff's jurisdictional pleading). The Plaintiff "must,

at the very least, assert factual allegations to support personal jurisdiction through the pleadings and affidavits submitted by the parties.  Here, however, no such factual allegation [with respect to the requirements of subparagraph (a)(3)] is even asserted in the Complaint, much less supported by [the] Plaintiff[] in [its] submissions before the Court in connection with the instant motion.  Rather, [the] Plaintiff[] make[s] a generalized request to conduct discovery that is more akin to a 'fishing expedition.'"  Maldonado v. Rogers, 99 F. Supp. 2d 235, 240 (N.D.N.Y. 2000); see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 715, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (Powell, J.) (concurring opinion) ("A plaintiff is not entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction.").  As the Plaintiff has failed to make even a "sufficient start" to demonstrate jurisdiction over Garel or his law firm, it is not entitled to discovery on the issue.

The Court finds that personal jurisdiction over the Attorney Defendants cannot be exercised under New York's long-arm statute.  Therefore,  the Court need not address the issue of whether the exercise of jurisdiction in the instant case comports with the requirements of due process.

In sum, for the foregoing reasons, the Attorney Defendants' motion to dismiss Defendants Arthur Garel and the Law Firm of Arthur Garel for lack of personal jurisdiction is granted.  Therefore, the Plaintiff's Complaint as to the Attorney Defendants is dismissed with prejudice.

**D.  The Reeve Defendants' Motion to Dismiss**

**1.  Personal Jurisdiction over the Reeve Defendants**

Similar to Garel, the Defendants George Reeve and Charlotte Reeve both assert that this Court lacks personal jurisdiction over each of them, in that they have at all relevant times resided

within the State of Florida, have not engaged in any business outside of Florida, and the Complaint, on its face, fails to establish any basis for personal jurisdiction over these Defendants. Specifically with regard to Charlotte, she claims that other than a "pro forma" joint ownership of stock evinced by one stock certificate with both her and her husband's name, she had no participation in any business transaction between the entities alleged to be involved in the subject matter of the Complaint. Nor did she participate in events alleged to have caused any of the wrongs alleged in the action. In addition, both Defendants maintain that the one and only transaction alleged in this case is a one-time purchase of stock from them for a Florida corporation, which never transacted any business in New York. Thus, they assert that they did not avail themselves of the privilege of conducting activities in New York, and cannot be subjected to the personal jurisdiction of New York courts.

In opposition, the Plaintiff argues that the Reeves are both properly subject to *in personam* jurisdiction in this Court because the claims arise from a contract that contains a New York forum selection clause that both Reeves signed, and because all of the claims arise out of their transaction of business in New York.

The Court finds that the Reeve Defendants are subject to personal jurisdiction not on the basis of New York's long arm statute, but rather on the basis of the forum selection clause contained in the Stock Purchase Agreement.

In assessing whether a party is subject to a forum selection clause, the Court inquires: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause was "mandatory or permissive," *i.e.*, "whether the parties are required to bring any dispute to the designated forum or simply permitted to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." Phillips v.

<u>Audio Active Ltd.</u>, 494 F.3d 378, 383 (2d Cir. 2007) (citation omitted).  If all of these conditions are met, then a forum selection clause is presumed to be enforceable.  As a fourth consideration, the Court inquires "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  <u>Id.</u> at 383–84 (citation omitted).

Here, the first two conditions are sufficiently satisfied.  There is no reason to believe that the clause was not reasonably communicated to either of the Reeves.  They signed the agreement containing this clause and thus presumably had an opportunity to review its contents.  <u>See, e.g.</u>, <u>Weingrad</u>, 2005 WL 2990645, at *4 ("[The signatory] is bound by the terms of the forum selection clause even if he did not take the time to read it because 'a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed.'") (internal citation omitted).  Neither Defendant has stated otherwise.  In addition, as set forth above, the language of the clause in the Stock Purchase Agreement is clearly mandatory, not permissive.

Next, with regard to whether the Reeve Defendants and the claims against them are subject to the forum selection clause, that question is easily answered.  Unlike the Attorney Defendants, which are non-signatories, the Reeve Defendants are signatories to the contract.  There is no doubt that a District Court may exercise jurisdiction over a non-resident who has consented by contract to litigate controversies in the district.  <u>See D .H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").

Charlotte Reeve's assertion that she signed the Stock Purchase Agreement in a "pro forma" manner merely as George Reeve's spouse does not permit her to escape personal jurisdiction in this Court. She signed the agreement containing the forum selection clause which is *prima facie* valid, and this will be enforced unless she can demonstrate that enforcement is unreasonable under the circumstances. See Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 380 (S.D.N.Y. 2001). Charlotte Reeve has failed to do so here. See id. at 381 ("Accordingly, to render a forum-selection clause unenforceable, a party must make a *strong showing* that the drafter of the agreement included the clause as a consequence of fraud, undue influence, or overweening bargaining power.") (emphasis added).

Finally, neither of the Reeve Defendants has rebutted the presumption of enforceability of the forum selection clause. The fact that it may pose a burden to the Reeves in order to litigate in New York is of no consequence. This type of argument does not constitute the "sufficiently strong showing" necessary to rebut the presumption of enforceability. See Martin v. Creative Mgmt. Grp., Inc., No. 10 Civ. 2214, 2010 U.S. Dist. LEXIS 66092, at *6 (S.D.N.Y. June 29, 2010) (finding defendant's argument that "few, if any, of [defendant's] witnesses or documents are located in Florida, rendering litigation in that state impossible," was insufficient to rebut the presumption of enforceability, because plaintiff "has shown only that litigation in Florida 'may be more costly or difficult, but not that it is impossible'" (quoting Phillips, 494 F.3d at 393)); Zuckerman v. Laurel, No. 08 Civ. 3913, 2008 U.S. Dist. LEXIS 74373, at *6 (S.D.N.Y. Sept. 24, 2008) ("Although a trial in Maine would be more difficult for plaintiffs, it certainly would not effectively deprive them of their day in court."). The Court need not engage in any further analysis under New York State law or due process. See Atl. Mut. Ins. Co. v. M/V HUMACAO, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001) ("[W]hen parties choose a particular

forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional due process requirements have been met.").

Therefore, the motions by George Reeve and Charlotte Reeve to dismiss the complaint for a lack of personal jurisdiction are denied.

## 2. Subject Matter Jurisdiction

The Reeve Defendants also contend that the Court lacks subject matter jurisdiction because the Complaint fails to allege any conduct by these Defendants giving rise to the subject matter jurisdiction of this Court. In this regard, the Reeve Defendants emphasize that all relevant actions took place in Florida between Florida residents and a Delaware corporation.

On the other hand, the Plaintiff asserts that diversity jurisdiction is appropriate because the Plaintiff is a Delaware corporation based in New York, all of the Defendants are Florida citizens, and the plaintiff's damages exceed $75,000.

Pursuant to 28 U.S.C. § 1332(a):

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
    (1) citizens of different States;
    (2) citizens of a State and citizens or subjects of a foreign state;
    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
    (4) a foreign state, defined in section 1603 (a) of this title, as plaintiff and citizens of a State or of different States.

Here, the Plaintiff is a Delaware corporation with its principal place of business in New York, and all of the Defendants are Florida citizens. In addition, the Complaint seeks $4.5 million in compensatory damages, exclusive of punitive damages. The Complaint satisfies all of the elements for diversity jurisdiction and there is proper subject matter jurisdiction in this Court.

Therefore, the Reeve Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

### 3.  Failure to State a Claim for Which Relief Can Be Granted

Next, the Reeve Defendants make several arguments with regard to the Plaintiff's asserted failure to state a claim for which relief can be granted.  First, Charlotte Reeve contends that the only specific allegation in the complaint against her is that she jointly owned shares of a company with her husband.  In this regard, she claims that all the other allegations which form the basis for this action are alleged to have occurred with the other Defendants.  In addition, she asserts that other than a "pro forma" joint ownership of stock evinced by one stock certificate with both her and her husband's names, she had no participation in any business transaction between the entities alleged to be involved in the subject matter of the Complaint, nor did she participate in events alleged to have caused any of the wrongs alleged in the action.  Further, according to the Reeve Defendants, the one and only transaction evinced by the pleadings is a one-time purchase of the stock of a Florida corporation from its shareholders, both Florida residents who negotiated and completed the transaction in Florida.  Finally, they argue that the Complaint fails to state a claim upon which relief can be granted because it fails comply with the requirements of Rule 9(b), which requires that all averments of fraud and the circumstances constituting fraud shall be stated with particularity.  In that regard, they state that the Complaint fails to apprise either Defendant of any conduct which forms the basis of any fraud allegations specific as to him or her.

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff

reasonably relied; and (5) which caused injury to the plaintiff."  Wynn v. AC Rochester, 273

F.3d 153, 156 (2d Cir. 2001).  Fraud claims are subject to the heightened pleading standards of

Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To comply

with Rule 9(b), a complaint alleging fraudulent misrepresentation under New York law must:

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v.

Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

    While the fraud alleged must be stated with particularity, Rule 9(b) specifies that

"[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).  Courts apply a more general standard for scienter "for the simple reason

that 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'"

Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (quoting Conn. Nat'l Bank v. Fluor

Corp., 808 F.2d 957, 962 (2d Cir. 1987)).  Therefore, "the requisite intent of the alleged speaker

of the fraud need not be alleged with great specificity."  Id.

    However, a plaintiff "'must allege facts that give rise to a strong inference of fraudulent

intent.'"  Lerner, 459 F.3d at 290 (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir.

1995)).  A "strong inference" of fraudulent intent may be established "either (a) by alleging facts

to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging

facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  Finally, "[w]here multiple

defendants are asked to respond to allegations of fraud, the complaint should inform each

defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987).

In this case, the Complaint indeed alleges that the Defendants made a material, false representation when they represented to Leviton pursuant to the Stock Purchase Agreement that there was no outstanding judgment, arbitration award, injunction, decree or warrant against or otherwise affecting ECES, nor was there any litigation, proceeding, arbitration or United States, state or local governmental investigation pending or, so far as was known to the Stockholders, threatened against or relating to ECES or its properties or business or the transactions contemplated by the Agreement. Nor was there any basis known to the Stockholders for any such litigation, proceeding, arbitration or investigation. According to the Complaint, this representation was false because ECES was and had been the subject of two racial discrimination claims filed with the EEOC by two former employees.

The Complaint also alleges that the Defendants made this representation with the intention of inducing reliance because Leviton relied on the representations, statements, and disclosures as constituting a full and complete disclosure of all known litigation and governmental investigations pending against ECES. Also it is alleged that Leviton would not have proceeded with the acquisition under the Stock Purchase Agreement if the Reeves had disclosed the existence of the EEOC matters. Leviton also alleges that it was injured by this fraud, because it was forced to defend and settle the EEOC claims.

Further, the Plaintiff identifies the speakers as all of the Defendants—the Reeves for signing the Stock Purchase Agreement containing the representation, and Garel for drafting an opinion letter that further confirmed the accuracy of this representation. In this regard, in the

Complaint, the Plaintiff also identifies in the complaint where and when the statements were made.

Moreover, there are facts alleged that constitute evidence of conscious misbehavior or recklessness, in that George Reeve arranged for ECES to retain counsel, Andrew Stone, Esq., to represent ECES in the EEOC matters, thereby vigorously contesting the two race discrimination claims. In addition, the Complaint states that George Reeve executed a detailed affidavit before he signed the Stock Purchase Agreement disputing the EEOC matters, which was entered into evidence in the EEOC proceedings. The Complaint also alleges that given the Reeves' status as ECES's sole shareholders; George Reeve's status as Chief Executive Officer, Chief Operating Office, and Chairman of the ECES Board, and their involvement in the daily operations of the company, Leviton relied on their representations as being truthful, accurate, and complete. Finally, the Complaint alleges both motive and an opportunity to commit fraud, stating that the Reeves were the closely-held company's sole shareholders and were poised to receive $2 million for their stock.

Although Charlotte Reeves claims in her motion to dismiss that she knew nothing about the transaction or the business, and only signed in a pro forma manner as George Reeve's spouse, this does not result in a failure to state a claim. Rather, the Court must accept all allegations in the Complaint as true at the motion to dismiss stage and ascertain only whether the Complaint has adequately stated a claim. Furthermore, while the fraud alleged must be stated with particularity, Rule 9(b) specifies that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts apply a more general standard for scienter "for the simple reason that 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir.

1996) (quoting <u>Conn. Nat'l Bank v. Fluor Corp.</u>, 808 F.2d 957, 962 (2d Cir. 1987)). Therefore, "the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity." <u>Id.</u>

Here, the Court finds that the allegations describing the nature of Charlotte Reeve's role in the company and the amount of money she would receive under the agreement constitutes "strong circumstantial evidence" that she either knowingly or recklessly made a fraudulent misrepresentation to induce the Plaintiff to purchase the company's stock. Moreover, it is a long-established principle under New York law that where, as here, a statement is made with the "pretense of knowledge", as the representation contained in the Stock Purchase Agreement was here, a defendant cannot "escape responsibility through plea of lack of personal knowledge of the truth of declarations made by [her]" because "their statement made as if from personal knowledge is equally fraudulent as though intentionally falsely made". <u>Sgarlata v. Carioto</u>, 23 Misc.2d 263, 201 N.Y.S.2d 384, 384 (N.Y. City Ct.1960) (quoting <u>Abel v. Paterno</u>, 245 A.D. 285, 281 N.Y.S. 58 (1st Dep't 1935) (quoting <u>Rothschild v. Mack</u>, 115 N.Y. 1, 21 N.E. 726 (1889)); <u>Ultramares Corp. v. Touche</u>, 255 N.Y. 170, 179, 174 N.E. 441 (1931) ("Fraud includes the pretense of knowledge when knowledge there is none.").

In light of all of the allegations described above, the Court finds that the Plaintiff has adequately stated a claim for fraud and with the requisite particularity pursuant to Fed. R. Civ. P. 9(b) against the Reeve Defendants.

The one final concern is with regard to the fact that there are multiple Defendants, including both George Reeve and Charlotte Reeve. As set forth above, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>DiVittorio v. Equidyne</u>

33

Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987); see In re Crude Oil Commodity Litig.,

No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("In situations where

multiple defendants are alleged to have committed fraud, the complaint must specifically allege

the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the

particularity requirement"); Merrill Lynch, Pierce, Fenner & Smith, v. Young, No. 91 Civ. 2923,

1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective

fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule

9(b)"). The Reeve Defendants argue that the Complaint fails to apprise either Defendant of any

conduct which forms the basis of any fraud allegations specific as to him or her.

The Court disagrees. Each spouse's involvement is simply that they each signed the

Stock Purchase Agreement containing the alleged fraudulent representation. As the Plaintiff

argues, the Complaint clearly and concisely describes the transaction, identifies the Stock

Purchase Agreement, specifies the fraudulent statements (the representations and warranties, and

Schedule L to the Agreement), and explains how those statements were false (because of the

undisclosed EEOC complaints).

In sum, the Reeve Defendants' motions to dismiss the Plaintiff's fraud claims for failure

to state a claim pursuant to Rule 12(b)(6) are denied.

### 4. Motion for a More Definite Statement 12(e)

To the extent that the Reeve Defendants cannot ascertain the conduct which the Plaintiff

specifically alleges against them, pursuant to Rule 12(e), they both alternatively move for a more

definite statement of the pleading. The Reeve Defendants assert that the Complaint is so vague

and/or ambiguous that they cannot reasonably prepare a response.

Rule 12(e) reads in pertinent part:

> [i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.

Fed. R. Civ. P. 12(e). Rule 12(e) is designed to prevent unintelligibility in complaints in order for a party to interpose a responsive pleading. An underlying aim of the Federal Rules is "'to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings.'" Asip v. Nielsen Media Research, Inc., No. 03 Civ. 5866, 2004 WL 315269, at *2, 2004 U.S. Dist. LEXIS 2350, at *7 (S.D.N.Y. Feb. 17, 2004) (quoting Markovic v. New York City Sch. Constr. Auth., No. 99 Civ. 10339, 2000 WL 1290604, at *3, 2000 U.S. Dist. LEXIS 13130, at *3 (S.D.N.Y. Sept. 13, 2000)); Vapac Music Publ'g, Inc., v. Tuff 'n' Rumble Mgmt, No. 99 Civ. 10656, 2000 WL 1006257, at *6, 2000 U.S. Dist. LEXIS 10027, at *16 (S.D.N.Y July 11, 2000). Accordingly, motions pursuant to Fed. R. Civ. P. 12(e) "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it. The Rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." Maxwell v. N.Y. Univ., No. 08 Civ. 3583, 2008 WL 5435327, at *2 (S.D.N.Y. Dec. 31, 2008) (internal citations and quotation marks omitted).

Here, the Court finds that the Plaintiff has adequately stated a claim for fraud with the requisite particularity under Rule 9(b). Consequently, the Reeve Defendants' motions pursuant to Fed. R. Civ. P. 12(e) are denied. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005) (quoting Asip v. Nielsen Media Research, No. 03 Civ. 5866, 2004 WL 315269, at *2 (S.D.N.Y. Feb. 18, 2004)) (noting

that the purpose of Rule 12(e) is to "strike at unintelligibility rather than want of detail. . . . [A]llegations that are unclear due to lack of specificity are more appropriately clarified by discovery.").

### 5. Punitive Damages

Finally, the Reeve Defendants move this Court to dismiss all claims for punitive damages, arguing that said claims fail to meet the requirements of both Florida law requiring leave of court prior to making such a claim and that of New York law, which bars such claims when they arise from contract damages, citing New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 662 N.E.2d 763 (1995). As an initial matter, Florida law is not applicable in the instant case, as any dispute arising out of the Stock Purchase Agreement is plainly governed by New York law. Therefore, the Court will not address whether punitive damages may be brought pursuant to Florida law.

Nevertheless, the Court agrees with the Reeve Defendants that the Plaintiff may not assert a claim for punitive damages under New York law.

In Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994), the Court of Appeals held that, in order to recover punitive damages for breach of contract, a plaintiff must establish that the defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directed not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally. See id., 83 N.Y.2d at 613, 634 N.E.2d at 944, 612 N.Y.S.2d at 343. The Court of Appeals has since suggested that these requirements are applicable whenever an action "has its genesis in the contractual relationship between the parties." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995).

In <u>TVT Records v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 94 (2d Cir. 2005) the Circuit reaffirmed that, under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights, but that such damages were recoverable when the breach also involved a particularly egregious fraud that was aimed at the public generally." <u>See Mayline Enterprises, Inc. v. Milea Truck Sales Corp.</u>, 641 F. Supp. 2d 304, 311 (S.D.N.Y. 2009) ("New York courts have refused to award punitive damages, where the plaintiff did not meet the 'public harm' requirement, no matter how improper the defendant's activity."); <u>see also</u> <u>United States v. Merritt Meridian Constr. Corp.</u>, 95 F.3d 153, 161 (2d Cir. 1996) (denying punitive damages where defendant contractor engaged in fraud by overcharging the public purse, because even such an egregious single incident perpetrated against the public was insufficient to "evince[ ] a pattern of conduct harming the general public."); <u>Ventus Networks, LLC v. Answerthink, Inc.</u>, No. 05 Civ. 10316, 2007 WL 582736, at *3 (S.D.N.Y. Feb. 22, 2007) (declining to award punitive damages because the defendant's allegedly fraudulent conduct was "an isolated transaction incident to an otherwise legitimate business."). Thus, where the parties are in a contractual relationship, courts have only allowed punitive damages for fraud where the additional damages are "necessary to vindicate a public right." <u>New York Univ. v. Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 315, 639 N.Y.S.2d 283, 287 (1995).

Here, there is no question that this action has its genesis in the contractual relationship between Leviton and the Reeves. In addition, the Court finds that, as assessed by this Court in earlier portions of this opinion, the Plaintiff had adequately pled a claim for fraud and thus the Defendants' alleged conduct is actionable as an independent tort. The Defendants also do not challenge that their alleged tortious conduct was directed towards the Plaintiff. Further, the

Court will assume, without deciding, that the tortious conduct is of an egregious nature. See Ostano Commerzanstalt v. Telewide Systems, Inc., 684 F. Supp. 1172, 1176 (S.D.N.Y. 1989) (finding punitive damages appropriate where a defendant entered into an agreement with a "clear and blatant intent to defraud").

However, the Plaintiff has failed to allege facts sufficient to establish that the Defendants' conduct was part of a pattern directed at the public generally. Although Leviton alleges that the Defendants made fraudulent representations concerning ECES's pending and/or threatened litigation, thereby inducing Leviton to enter into a Stock Purchase Agreement it otherwise would not have entered into, this in no way indicates that the Defendants directed their allegedly fraudulent conduct towards the general public. In this regard, there are no allegations that defrauding the general public was the very basis of the Defendants' business. Rather, the facts as alleged in the Complaint suggest that the Defendants' allegedly fraudulent conduct was "an isolated transaction incident to an otherwise legitimate business." Walker v. Sheldon, 10 N.Y.2d 401, 406, 179 N.E.2d 497, 223 N.Y.S.2d 488 (1961). Here, the Plaintiff has alleged only a single incident of misrepresentation to a single victim, so that the Plaintiff cannot recover punitive damages. See, e.g., Mayline Enterprises, 641 F. Supp. 2d at 312; Cagan v. Gadman, No. 08 Civ. 3710, 2012 WL 5422270, at *5 (E.D.N.Y. Oct. 31, 2012) ("Plaintiff fails to offer evidence demonstrating that Gadman's conduct, even if "imply[ing] a criminal indifference to civil obligations . . . was aimed at the general public.")

The punitive damages claim is thereby dismissed with prejudice. It is clear from the nature of the Plaintiff's fraud claim that the Defendants' allegedly fraudulent misrepresentations regarding the company's legal issues were not directed to the general public, but specifically to

the Plaintiff. Therefore, the Court finds that it would be futile to grant the Plaintiff leave to replead its request for punitive damages and accordingly, leave to replead is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Attorney Defendants' motion to dismiss (Docket Entry No. 18) is granted and the claims against them are dismissed with prejudice; and it is further

**ORDERED**, that the Reeve Defendants' motion to dismiss for lack of personal jurisdiction and for failure to state a claim is denied; and it is further

**ORDERED**, that the Reeve Defendants' motion to dismiss the Plaintiff's claim for punitive damages is granted.

**SO ORDERED.**
Dated: Central Islip, New York
February 7, 2013

_____ */s/ Arthur D. Spatt* _____
ARTHUR D. SPATT
United States District Judge